# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JASON LUDKE a/k/a Muhammad Abdun Naasir**
  **Petitioner-defendant,**

 v.          **Case No. 20-C-54**
             **(Criminal Case No. 16-CR-175)**

**UNITED STATES OF AMERICA**
  **Respondent-plaintiff.**

---

## DECISION AND ORDER

Petitioner moves, pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence for providing material support to a foreign terrorist organization. For the reasons that follow, I deny his motion without a hearing and dismiss this action.

## I. BACKGROUND

The government charged petitioner and a co-defendant, Yosvany Padilla-Conde, with conspiring and attempting to provide material support to a foreign terrorist organization, contrary to 18 U.S.C. § 2339B(a)(1). In September 2016, petitioner engaged in a series of communications with an FBI undercover employee regarding petitioner's desire to leave the United States and join ISIS. During these communications, petitioner pledged his allegiance to the leader of ISIS, stated that he wants to live under Shariah law, and indicated he was ready to make hijrah (migration) to join ISIS as he knows they are on the path of Haq (truth). He further discussed his alleged martial arts and computer training, which would be a benefit to ISIS once he joined. His plan was to drive from Wisconsin to Mexico, from there traveling to Raqqah, Syria and then to Mosul, Iraq.

On October 5, 2016, law enforcement located petitioner and Padilla-Conde in San Angelo, Texas, heading toward the United States/Mexican border. Petitioner was arrested on an outstanding warrant from Wisconsin for violating his supervised release. He was at that time on supervision related to a conviction for writing threatening letters to a federal judge. He had been on GPS monitoring and cut off his GPS bracelet prior to leaving Wisconsin for Mexico.

After he was charged, petitioner filed pre-trial motions to dismiss the indictment, for a bill of particulars, and to sever his trial from Padilla-Conde's. The magistrate judge handling pre-trial proceedings in the case recommended that the motion to dismiss be denied but granted the motion to sever and granted in part the motion for a bill of particulars. Petitioner objected to the recommendation, but I denied the motion to dismiss, which alleged insufficiency of the indictment. I began that decision by setting forth the statutory provisions at issue:

> "Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life." 18 U.S.C. § 2339B(a)(1). Section 2339B(g)(4) defines the term "material support or resources" by reference to § 2339A(b), which sets forth a list of items, including "personnel (1 or more individuals who may be or include oneself)."
>
> The instant indictment alleges in count one that [petitioner] conspired to provide material support and resources, "including but not limited to personnel," to the terrorist organization ISIL. (R. 5 at 1-2.) Count two alleges that [petitioner] attempted to provide material support and resources, "including but not limited to personnel," to ISIL. (Id. at 3.)
>
> Section 2339B(h) explains that:
>
> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or

2

> control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h). [Petitioner] argues that his indictment is deficient because it fails to plead that he attempted to "work under [ISIL's] direction or control" or "organize, manage, supervise or otherwise direct the operation of [ISIL]." (R. 41 at 10; R. 54 at 2.)

"To be sufficient, an indictment must state each element of the crimes charged, provide the defendant with adequate notice of the nature of the charges so that the accused may prepare a defense, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." United States v. Nayak, 769 F.3d 978, 980 (7th Cir. 2014). Indictments need not exhaustively recount the facts surrounding the crime's commission, United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997), or provide the details of how it will be proved, id. at 1191. Nor must it include facts negating an affirmative defense or an exclusionary condition in the charging statute(s). See McKelvey v. United States, 260 U.S. 353, 357 (1922).

[Petitioner's] challenge primarily turns on whether § 2339B(h) sets forth an element (which must be pled in the indictment) or a definition (which ordinarily need not). As the magistrate judge noted, the district courts which have considered the question have held that this provision is not an element. (R. 48 at 8.) . . .

. . . I agree with the reasoning of United States v. Shafi, 252 F. Supp. 3d 787 (N.D. Cal. 2017) and United States v. Pugh, No. 15-CR-116, 2015 U.S. Dist. LEXIS 170271 (E.D.N.Y. Dec. 21, 2015), adopted by the magistrate judge here. First, the text and structure of the statute support the notion that sub.(h) is definitional. Sub.(a) establishes a criminal prohibition, including a mens rea requirement, and sets forth the available penalties. Sub.(h) places "personnel" in quotation marks, referring back to a term previously used, and provides a limiting definition of that term. Shafi, 252 F. Supp. 3d at 793-94. Second, the legislative history shows that the purpose of sub.(h) was to more clearly define one of the forms of material support. Id. at 795 (citing House Judiciary Committee report); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 35 (2010) (noting that Congress, in response to vagueness challenges, "added clarity to the statute by providing narrowing definitions of the terms 'training,' 'personnel,' and 'expert advice or assistance'").

Alternatively, should sub.(h) be deemed an "exception" to the general prohibition in sub(a), as opposed to a "definition," the result is the same. "An

3

> indictment founded on a general provision of a statute need not negative an exception made by a proviso or other distinct clause, whether in the same section or elsewhere." United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978). [Petitioner] fails to show that the indictment's omission of facts regarding this issue impedes his ability to mount a defense. Nor does he show that, under the circumstances here, the definition is so critical that the general rule should not apply. While it is true that sub.(h) includes the word "knowingly," it is not accurate to say that this provision supplies the mens rea required for the offense. Sub.(a) already requires that the defendant "knowingly" provide the support; it further provides that the defendant "must have knowledge that the organization is a designated terrorist organization."

(Case No. 16-CR-175, R. 71 at 1-4, footnote omitted.)

Petitioner then pleaded guilty to count one of the indictment, and I ordered a pre-sentence report ("PSR"). Applying U.S.S.G. § 3A1.4, the terrorism provision, the PSR set a guideline range of 360 months to life (offense level 39 and criminal history category VI). However, because the statutory maximum was 20 years, the guidelines defaulted to 240 months pursuant to U.S.S.G. § 5G1.1(a).

At the sentencing hearing, I found U.S.S.G. § 3A1.4 flawed and entitled to less respect. See Kimbrough v. United States, 552 U.S. 85, 109 (2007). After considering the arguments of the parties and all of the 18 U.S.C. § 3553(a) factors, I imposed a sentence of 84 months in prison, followed by 10 years of supervised release.

Petitioner took no appeal but later filed the instant collateral attack under § 2255, raising a variety of claims. I directed the government to respond and permitted petitioner to reply. With his reply, petitioner submitted a motion for appointment of counsel. He subsequently filed a motion to amend, seeking to add a new claim, to which the government also responded. The matter is ready for decision.

4

## II.  DISCUSSION

**A.     Section 2255**

Section 2255 permits a federal prisoner challenge his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process.  Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007).  "Hence, relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quote marks omitted).

Moreover, a § 2255 action does not serve as a substitute for a direct appeal.  Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007).  Claims not raised at trial or on direct appeal are generally defaulted for collateral review.  See, e.g., Sandoval v. United States, 574 F.3d 847, 850 (7th Cir. 2009).  "A claim that has been procedurally defaulted ordinarily may only be raised in a § 2255 proceeding if the defendant demonstrates that he is actually innocent, or that there is cause and actual prejudice."  Torzala v. United States, 545 F.3d 517, 522 (7th Cir. 2008) (internal quote marks omitted).

Claims of ineffective assistance of counsel constitute an exception, however, and may be raised initially under § 2255.  See Massaro v. United States, 538 U.S. 500, 504 (2003).  To establish a claim of ineffective assistance, the defendant must show (1) that his trial counsel's

5

performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the first element of the test, the defendant must direct the court to specific acts or omissions by his counsel falling outside the wide range of professionally competent assistance. Blake v. United States, 723 F.3d 870, 879 (7th Cir. 2013). The court's assessment of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. To satisfy the second element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id.

An evidentiary hearing on a § 2255 motion is not mandatory. Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995). For a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions. Mere unsupported allegations cannot sustain a petitioner's request for a hearing. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996).

**B.    Petitioner's Claims**

In his original motion, petitioner raises 10 claims, which at times overlap. For clarity, I address them one by one.

**1.    Section 2339B**

Petitioner first argues that 18 U.S.C. § 2339B is unconstitutional, overbroad and vague. He contends that the statute illegally subverts his rights to freedom of speech, free exercise of

6

religion, and association. He further contends that the statute is vague, apparently based on the interplay between § 2339B(a) and (h); that the government never established the "knowledge" element of the statute or that he acted under the "direction and control" of a foreign terrorist organization; and that he was convicted for speech/association rather than conduct.

This claim is procedurally defaulted, as petitioner did not raise it when the case was here originally or on direct appeal.[1] Even if he could show cause for his default, he cannot show prejudice as his arguments lack merit.[2]

To the extent petitioner continues to argue sub-section (h) sets forth an element, he fails to establish any error in my previous conclusion; nor does he explain how the interplay between sub-sections (a) and (h) of the statute creates unconstitutional vagueness. To the extent

---

[1]As indicated above, petitioner did file a pre-trial motion challenging the sufficiency of the indictment based on the omission of the § 2339B(h) "element." However, he did not raise the specific contentions made in his first § 2255 claim.

[2]In the section of the 2255 form asking whether petitioner filed a direct appeal, he checked "no" then wrote: "was 'coerced' by trial attorneys Uller & Phillip, I couldn't file [an] appeal - no issues and it would harm me." (R. 1 at 3.) Despite raising a number of issues with trial counsel's representation, petitioner does not in the original motion ever allege that he told his lawyers to appeal and they failed/refused to do so. I advised petitioner at the conclusion of the sentencing hearing that he had the right to appeal; based on the statement petitioner wrote in the 2255 form, it appears his lawyers advised him against an appeal. In reply, in arguing that his claims are not procedurally defaulted, petitioner contends that he "was manipulated and coerced by trial counsel to not appeal; and trial counsel ignored to file an appeal after [he] demanded an appeal." (R. 7 at 1.) Arguments raised for the first time in reply are waived. See White v. United States, 8 F.4th 547, 552 (7th Cir. 2021). Moreover, despite filing a motion to amend his § 2255 petition to raise a different ineffective assistance claim (based on failure to advise of a possible collateral consequence), petitioner has not moved to amend to add an ineffective assistance claim based on failure to file an appeal on his demand. Accordingly, there is before the court no independent ineffective assistance claim based on failure to appeal on demand. Finally, because all of petitioner's claims lack merit, even if he could show cause for his failure to appeal, his motion would fail.

7

petitioner argues the evidence was insufficient to establish his guilt, he waived that claim by pleading guilty. See United States v. Langner, 668 Fed. Appx. 168, 169 (7th Cir. 2016) ("By pleading guilty, however, Langner waived his right to contest the sufficiency of the evidence; as a general rule, a defendant who pleads guilty waives his right to appeal any nonjurisdictional issues."). To the extent he argues the terms used by the statute are unconstitutionally vague, such arguments have been rejected by the courts. See, e.g., United States v. Farhane, 634 F.3d 127, 140 (2d Cir. 2011) (citing Holder v. Humanitarian Law Project, 561 U.S. 1 (2010)); see also id. at 151 (affirming conviction on similar facts). And to the extent he argues the statute punishes mere speech or association, he is wrong. See Humanitarian Law Project, 561 U.S. at 39-40 (explaining that the statute prohibits the act of giving support); United States v. Jones, 383 F. Supp. 3d 810, 815-17 (N.D. Ill. 2019) (collecting cases).

### 2. Motion to Dismiss

Petitioner argues that I erred in denying his motion to dismiss. The claim is defaulted based on failure to appeal. In any event, it also lacks merit, as the indictment set forth the essential elements of the crime, for the reasons stated in my original decision. Petitioner develops no argument explaining why that decision was wrong. See White, 8 F.4th at 552 (stating that perfunctory and undeveloped arguments are waived). Petitioner cites a number of cases, e.g., Rehaif v. United States, 139 S. Ct. 2191 (2019) and Mathis v. United States, 136 S. Ct. 2243 (2016), but none of them address the statute at issue here.

Petitioner argues that the government failed to show that he had the requisite "knowledge," that he was under the "direction and control" of a foreign terrorist organization, or that he knew ISIS was engaged in terrorist activity. However, his guilty plea waived any challenge to the sufficiency of the evidence. See Langner, 668 Fed. Appx. at 169.

8

Petitioner also argues, as part of this claim, that his counsel was ineffective in misleading him with false information and not explaining the statutory definitions of "terrorism" and "terrorist activity," such that his plea was not knowingly, intelligently, and voluntarily entered. He contends that, had counsel not blocked his access to the court and mislead him, the result of the proceeding would have been different and the charges dismissed. Petitioner fails to explain how these alleged errors prevented the court from addressing his claim regarding the sufficiency of the indictment. Nor does he develop the argument that counsel's alleged errors impacted the validity of his plea. As will be discussed further below, during the plea colloquy, petitioner assured me that he understood the charges and that he was satisfied with counsel's advice. Petitioner's vague claims in the § 2255 motion cannot overcome these statements. See United States v. Reed, 859 F.3d 468, 471 (7th Cir. 2017) (rejecting plea withdrawal based on vague claims that contradicted statements during plea colloquy).

### 3. CIPA Security Clearance

Petitioner argues that his lawyers provided ineffective assistance because they did not obtain security clearances under the Classified Information Procedures Act ("CIPA") so that they could participate in CIPA hearings. In this case, the government submitted a motion under CIPA to delete certain information from the discovery. The magistrate judge conducted the ex parte, in camera review provided by the statute and granted the motion. (Case No. 16-CR-175, R. 42.)

Petitioner's argument misfires because, even if they had obtained security clearances, his lawyers could not have "participated" in the CIPA proceeding. See United States v. Asgari, 940 F.3d 188, 192 (6th Cir. 2019) ("Nothing in [CIPA] suggests that defense counsel has a role to play when the district court assesses the relevance or helpfulness of the classified

9

information. Just the opposite. The statute refers to the district court's assessment of these factors through an ex parte hearing . . . that occurs without the defendant's knowledge[.]"); see also United States v. O'Hara, 301 F.3d 563, 568 (7th Cir. 2002) (discussing the trial court's review under CIPA).

Petitioner also fails to explain how he suffered any prejudice based on the CIPA procedure in this case. In reply, he suggests that the materials would have supported an entrapment defense, but he does not explain how.

### 4. Access to the Courts

Petitioner argues that throughout his time in pre-trial detention he wrote numerous letters to the court indicating that he wanted specific motions argued and that he wanted new lawyers. He contends that his letters were intercepted by the U.S. Marshals and not forwarded to the court. He concludes that, had the letters not been intercepted, he never would have entered a guilty plea under the coercion of his lawyers.

Claims of denial of access to the court are typically raised in a civil action against correctional officials, not in a post-conviction motion challenging the prisoner's conviction. In any event, petitioner's claim that his lawyers coerced his plea is flatly contradicted by his statements during the plea colloquy, during which he said he was satisfied with his lawyers (Case No. 16-CR-175, R. 126 at 2:21-23), that no one had forced him to plead guilty (Id. at 4:20-23), and that he was pleading guilty voluntarily (Id. at 4:24-25). Nor does he explain what motions he wanted filed or how they would have changed the outcome of the case. Petitioner cannot demonstrate any prejudice from the alleged denial of access to the court.

10

### 5. Terrorism Enhancement

Petitioner argues that the court did not fulfill its fact-finding duty before imposing the enhancement under U.S.S.G. § 3A1.4. He further argues that the enhancement does not apply to his conduct.

Petitioner stipulated to this enhancement in his plea agreement, he did object to its inclusion in the PSR, and he took no appeal challenging its application. Even if he could overcome this default/waiver, he could not show prejudice, as I specifically declined to follow this guideline in imposing sentence under 18 U.S.C. § 3553(a). The error he alleges had no impact on the outcome. See United States v. White, 883 F.3d 983, 987 (7th Cir. 2018) ("When a judge explains that a disputed guideline issue ultimately did not matter for the exercise of sentencing discretion under § 3553(a), we will treat an arguable error in the guideline calculation as harmless.").

### 6. Speedy Trial Act Violation

Petitioner claims a violation of his rights to a speedy trial under the Sixth Amendment and under the Speedy Trial Act. Petitioner does not develop the argument (or address the numerous exclusions of time set forth on the record). Underdeveloped arguments that fail to marshal facts of record in support are waived. See, e.g., Campos v. Cook Cty., 932 F.3d 972, 976 (7th Cir. 2019). Moreover, this claim is waived by petitioner's guilty plea, see 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."), and by the plain terms of his plea agreement (R. 89 at 10 ¶ 29, indicating that petitioner waived any speedy trial claims).

11

### 7. Selective Prosecution

Petitioner argues that his lawyers were ineffective for failing to raise a selective prosecution argument. He contends that the government prosecutes only Muslims under the statutes used in this case.

When the claim of ineffective assistance is based on counsel's failure to present a pre-trial motion, the defendant must prove the motion was meritorious. United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005). To succeed on a selective prosecution claim, the defendant must demonstrate that a prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. United States v. Armstrong, 517 U.S. 456, 465 (1996). To establish a discriminatory effect in a religion case, the defendant must show that similarly situated individuals of a different religion could have been prosecuted for the offenses with which the defendant was charged but were not so prosecuted. See id. at 465, 470. Because a presumption of regularity supports prosecutorial decisions, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties. Id. at 464.

Petitioner offers no specific evidence in support of his claim. He refers to an unnamed "study" of § 2339B, "former government officials," and "numerous banking industries." This falls far short of the required showing. See, e.g., United States v. Westmoreland, 122 F.3d 431, 434 (7th Cir. 1997). His lawyers were not ineffective for failing to pursue this line of attack on the prosecution.

### 8. Freedom of Speech and Association

Petitioner's eighth claim—that he was denied his rights to speech and

12

association—substantially overlaps with his first claim. For the reasons stated above, this claim fails. It is procedurally defaulted, and § 2339B punishes actions, not just speech and association. See Jones, 383 F. Supp. 3d at 817.

### 9. Denied Discovery

Petitioner argues that he was denied inculpatory and exculpatory evidence to assist in his defense due to the CIPA filing. Because petitioner never challenged the CIPA procedure in district court and did not raise the issue on appeal, this claim is procedurally defaulted. Petitioner also offers nothing more than generalities in alleging prejudice. Petitioner contends that his lawyers were ineffective for not challenging the CIPA filing, but his conclusory argument fails to provide the specifics that are required for such a claim. See United States v. Lathrop, 634 F.3d 931, 939 (7th Cir. 2011) ("When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced."). Petitioner again argues that his lawyers should have participated in the CIPA proceeding, but that is not how those proceedings work, as discussed above.

### 10. Withdrawal of Guilty Plea

Petitioner argues that his trial lawyers were ineffective for not explaining the meaning of certain terms; that he was suffering from an unspecified mental impairment at the time of the plea, which made him incoherent; that he was coerced by his lawyers into stipulating to the factual basis for the plea; that he never understood the elements of the charges; and that given the complexity of the charges his plea was not knowing and intelligent.

These claims are flatly contradicted by petitioner's statements during the plea colloquy,

13

during which he assured me that he had thought about pleading guilty and decided it made sense for him (Case No. 16-CR-175, R. 126 at 2:16-18), that he had no mental health issues (Id. at 2:19-20), that he was satisfied with his lawyers (Id. at 2:21-23), that he understood the charges (Id. at 3:1-2), that he had gone over the plea agreement and understood it (Id. at 4:1-3), that no one had forced him to plea guilty (Id. at 4:20-23), and that the facts set forth in the plea agreement were substantially correct (Id. at 5:1-4).

"If these representations to the judge are true, his current submission must be false. Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005). Petitioner offers no such explanation here.

In reply, petitioner notes that the PSR discusses his mental health issues. However, he points to nothing in that report substantiating his claim that he was "under the influence of prescribed medications" or in an "inebriated mental health state" at the time of the plea. (R. 7 at 5-6.) "[D]efendants with mental illnesses can and often do enter knowing and voluntary pleas, so long as the judge can determine that the defendant is able to understand and participate in the proceedings. And [petitioner] points to no evidence that his judgment was significantly impaired during either the plea-agreement negotiations or the colloquy." United States v. Dyer, 892 F.3d 910, 914 (7th Cir. 2018) (internal citation omitted).

Petitioner further alleges in an affidavit attached to his reply that he told trial counsel that he did not understand the plea bargain, but counsel told him he had no choice but to sign it or continue to sit in solitary confinement in jail. (R. 8 at 2.) This claim, too, is flatly contradicted by petitioner's statements during the plea colloquy. Petitioner contends that throughout the

14

case his lawyers blocked his attempts to express his dissatisfaction with their efforts to the court (R. 8 at 2), but when he had the chance to speak to me at the plea hearing he said nothing of the sort.

Finally, petitioner contends in reply that an "evidentiary hearing is warranted to determine what improper advice counsel did or didn't give." (R. 7 at 2.) The court need not hold a hearing to explore the validity of a guilty plea based on such vague contentions. See Politte v. United States, 852 F.2d 924, 931 (7th Cir. 1988).

## C.    Motion for Appointment of Counsel

Along with his reply brief, petitioner filed a "motion for appointment of appeal counsel." (R. 9.) This court does not appoint counsel for appeals. Circuit Rule 51(c) (7th Cir.) ("The court of appeals will make all appellate appointments."). To the extent petitioner wants counsel appointed in this § 2255 action, his motion will be denied.

"A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel." Oliver v. United States, 961 F.2d 1339, 1343 (7th Cir. 1992). Under 18 U.S.C. § 3006A(a)(2), the district court may appoint counsel for a § 2255 petitioner if "the interests of justice so require." The court must appoint counsel if it determines that an evidentiary hearing is required to decide the motion, Rule 8(c) of the Rules Governing Section 2255 Proceedings, but no hearing is needed in this case. And because petitioner is able to articulate his claims, the claims are relatively straightforward, and the claims lack merit, the interests of justice do not support the discretionary appointment of counsel. See Oliver, 961 F.2d at 1343.

15

### D. Motion to Amend

Several months after the submission of his reply brief, petitioner filed a motion to amend his § 2255 petition. In the motion, he seeks to add a claim that his lawyers provided ineffective assistance by failing to advise him of "the suspension and debarment immigration consequences of a plea." (R. 10-1 at 1.) He bases the claim on correspondence he received from U.S. Immigration and Customs Enforcement regarding "debarment from government procurement programs." (R. 10-2 at 1.)

The government opposes granting leave to amend, arguing that the new claim is brought beyond the one-year statute of limitations set forth in 28 U.S.C. § 2255(f) and does not relate back to his earlier, timely clams of ineffective assistance. That said, the government concedes that answering the proposed amendment is simple, does not prejudice the government, and does not require an evidentiary hearing. I will grant the motion to amend and address the claim on the merits.

Petitioner appears to be raising a claim under Padilla v. Kentucky, 559 U.S. 356 (2010), in which the Supreme Court held that a lawyer performed deficiently when he failed to advise a non-citizen defendant that he would be deported based on his guilty plea. Petitioner is a United States citizen (Case No. 16-CR-175, R. 126 at 3:23-24), and while the civil proceedings about which he complains have been initiated by Immigration and Customs Enforcement, he is not being deported but rather excluded from certain government contracts and benefits. Petitioner cites no authority for extending Padilla to a collateral consequence of this sort. See Gamble v. United States, Cv. No. 16-02527, Cr. No. 14-20171, 2020 U.S. Dist. LEXIS 14687, at *29 (W.D. Tenn. Jan. 29, 2020) (collecting cases declining to extend Padilla to loss of government benefits and programs).

16

In any event, in his plea agreement, which he assured me he had read and understood, petitioner acknowledged that "nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies." (Case No. 16-CR-175, R. 89 at 10 ¶ 30.) Accordingly, petitioner could not have entered his plea under any misapprehension regarding the possibility of this kind of collateral consequence. To the extent petitioner argues the debarment violates his ex post facto and/or double jeopardy rights, those contentions should be raised in the civil proceeding rather than a collateral attack on his conviction.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion (R. 1) is denied, and this case is dismissed. The clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that petitioner's motion to appoint counsel (R. 9) is denied.

**FINALLY, IT IS ORDERED** that petitioner's motion to amend (R. 10) is granted.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were

17

adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge